IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| A.K.C. a minor, by and through his Mother and Father and Next Friend, and JARROD COKER And BARBARA W. COKER, individually, | ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) CIVIL ACTION FILE NO. |
| | ) 2:07cv-00743-MHT |
| CONAGRA FOODS, INC., | ) |
| Defendant. | ) ) |

## MOTION FOR A STAY OF ALL PROCEEDINGS
## AND INCORPORATED MEMORANDUM IN SUPPORT

Defendant ConAgra Foods, Inc. ("ConAgra"), by and through counsel, respectfully

moves this Court for a stay of all proceedings in this matter, other than mutually agreed-to

procedures to inspect, test, preserve, or document that which the parties believe may be

material or relevant evidence in this and related matters, pending this case's transfer as a tag-

along action to the Multi District Litigation (the "MDL") No. 1845 in the Northern District of

Georgia (Atlanta Division).

## PRELIMINARY STATEMENT

This Complaint was filed by Plaintiffs alleging that they were injured after eating peanut

butter that was allegedly contaminated with the *Salmonella* bacterium.  Plaintiffs plead the

following causes of action: liability under the Alabama Extended Manufacturer's Liability

Doctrine ("AEMLD"), breach of warranties, negligence, wantonness, gross negligence, and strict

liability.  (See Plaintiffs' Compl., ¶¶ 12-34.)

1

On February 14, 2007, ConAgra, in conjunction with the Food and Drug Administration (FDA), announced a voluntary recall of Peter Pan Peanut Butter and certain Great Value Peanut Butter beginning with product code 2111 due to the potential risk of contamination from *Salmonella* Tennessee, a bacterium that can cause food borne illness under certain circumstances. The recall was based on an epidemiological study reported by the Center for Disease Control and Prevention ("CDC") that purportedly linked 288 reported cases of food borne illness in thirty-nine states to the consumption of Peter Pan Peanut Butter.

Since the recall announcement, numerous cases have been filed against ConAgra in federal and state courts across the country. The actions claim personal injury and/or other damages arising from the purchase or consumption of the recalled peanut butter.

Each of the Complaints shares certain factual allegations and legal theories. For example, all plaintiffs allege that they consumed and/or purchased the ConAgra peanut butter tainted with Salmonella. They further allege that the contamination was due to the alleged improper manufacturing, testing, and/or distribution of that peanut butter. Most plaintiffs allege one or more of the following four causes of action: strict liability, breach of warranty, negligence, and negligence per se. *See*, *e.g.*, *Brian Cox, et al. v. ConAgra Foods, Inc.* Complaint (alleging all four causes of action) (attached as Exhibit A). Consequently, pretrial discovery necessarily will overlap and consolidation in one transferee court will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." See 28 U.S.C. § 1407(a).

On July 17, 2007, the Judicial Panel on MultiDistrict Litigation ("the JPML") issued an order, attached hereto as Exhibit B, creating an MDL (No. 1845) for the peanut butter litigation before Judge Thomas Thrash in the Northern District of Georgia, Atlanta Division and

transferring certain cases to the MDL for consolidated discovery and pretrial rulings. Specifically, the JPML stated that this centralization "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation" and "is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve the resources of the parties, their counsel, and the judiciary." Exhibit B at p. 2.

On August 24, 2007, ConAgra sent a notice to the JPML pursuant to Rule 7.5(e) of the Rules of Judicial Procedure for Multidistrict Litigation identifying this action as a potential "tag-along" Action. 8/24/07 Letter, attached hereto as Exhibit C.

Accordingly, for reasons of comity and judicial economy, as more fully set forth below, ConAgra respectfully requests that this Court stay discovery in this matter, other than mutually agreed-to procedures to inspect, test, preserve, or document that which the parties believe may be material or relevant evidence in this and related matters, until such time as this case is transferred to the MDL.

## ARGUMENT

Under Rule 1.5 of the Rules of Procedure for the Panel, this Court retains jurisdiction over all pre-trial proceedings notwithstanding the pending MDL transfer requests. Accordingly, until this case is transferred into the MDL, the determination to stay or proceed with this case rests within the sound discretion of this Court. See, e.g., Falgout v. Microsoft Corp., No. CIV.A.00-00779, 2000 WL 462919, at *1 (E.D. La. Apr. 19, 2000) ("[C]ourts have inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'") (citation omitted).

In the interests of prudence and judicial economy, this Court should stay these proceedings until such time as the JPML rules on the request to transfer this case to the MDL. See Namovicz v. Cooper Tire & Rubber Co., 225 F. Supp. 2d 582, 585 (D. Md. 2001) ("[T]he Court also determines that a stay in proceedings pending the determination of the MDL Panel is appropriate.  A stay is necessary to ensure that, in the event consolidation of all cases for pre-trial litigation is ordered, there is consistent treatment of the numerous lawsuits and that judicial resources are not wasted.") (citing 28 U.S.C. § 1407(a)); see also McCrary v. Bayer Corp., No. CIV.A. 02-642, 2002 WL 1467691, at *1 (E.D. La. July 3, 2002) ("[T]he decision whether to grant or deny a stay is completely within the discretion of the Court . . . .  It continues to remain the opinion of this Court that the plaintiff will not be prejudiced by this temporary stay as any prejudice resulting from this short delay is clearly outweighed by the benefit of judicial efficiency and avoidance of inconsistent rulings."); Tench v. Jackson Nat'l Life Ins. Co., No. 99 C 5182, 1999 WL 1044923, at *1 (N.D. Ill. Nov. 12, 1999) ("Under these circumstances, i.e., pending a decision by the MDL Panel whether to add a case, stays are frequently granted to avoid duplicative efforts and preserve valuable judicial resources.").

## I.    A STAY OF THESE PROCEEDINGS WOULD PROMOTE COMITY AND JUDICIAL ECONOMY.

When an action such as this one "may be transferred by the . . . Panel to a consolidated MDL proceeding, . . . courts have determined that a stay of the action is appropriate if it serves the interests of judicial economy and efficiency."  Smith v. Mail Boxes, Etc. USA, Inc. 191 F. Supp. 2d 1155, 1157 (E.D. Cal. 2002) (citing cases).  The overlap of certain factual and legal issues, particularly with respect to ConAgra, with the other cases already in the MDL, or awaiting transfer to the MDL, makes this case ripe for consolidation and transfer by the JPML. See 28 U.S. C. §1407 ("When civil actions involving one or more common questions of fact are

pending in different districts, such actions may be transferred to any district for coordinated and consolidated pretrial proceedings."). Accordingly, a stay of this matter until such time as the JPML rules on the request to transfer this case to the MDL will eliminate unnecessary duplication of litigation, serving the interests of judicial economy.

Proceeding with this case, notwithstanding the pending transfer request, will result in the unnecessary consumption of judicial time and energy in attempting to <u>inter alia</u>, establish initial case management guidelines and preliminary orders and monitor discovery. See, e.g., <u>Rivers v. Walt Disney Co.</u>, 980 F. Supp. 1358, 1361 (N.D. Cal. 1997) ("If this case is not stayed, preliminary proceedings would continue as required . . . and this Court would need to monitor discovery and approve a case management plan . . . . Taking on such a task at this time would seem to unnecessarily consume judicial time and energy.") This Court should in its discretion defer this matter briefly until the Panel rules on the transfer request. <u>See, e.g.</u>, <u>In re Amstead Indus. Inc. "ERISA" Litig.</u>, 162 F. Supp. 2d 697, 698 (J.P.M.L. 2001) (noting that "Section 1407 has the salutary effect of placing all the related actions before a single judge who can formulate a pretrial program that: i) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues . . ., and ii) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.") (internal citation omitted).

## II.    A STAY WOULD BENEFIT THE PARTIES.

In deciding to grant a stay, this Court properly may consider the interests of the parties in addition to the Court's own interest in conserving judicial resources. <u>See, e.g.</u>, <u>Falgoust</u>, 2000 WL 462919, at *2. The parties will benefit from a stay of this matter until this case is transferred to the MDL.

First, absent a stay, ConAgra would be forced into the patently disadvantageous position of developing and presenting similar defenses in separate district courts.  See Weinke v. Microsoft Corp., 84 F. Supp. 2d 989, 990 (E.D. Wis. 2000) (holding that ipse dixit assertions of prejudice will not be determined to "outweigh the disadvantages of litigating identical claims in a multitude of venues").  Without a stay, this case will proceed in parallel with the MDL, forcing, inter alia, duplicative discovery should those motions be denied.  E.g., Sevel v. AOL Time Warner,  232 F. Supp. 2d 615, 616 (E.D. Va. 2002) (granting a stay of the proceedings pending decision regarding transfer by the Panel, noting that a stay had the salutary purpose of "avoid[ing] undue confusion and duplication of effort" in complex securities fraud actions). Such duplication of effort, particularly unnecessary in this case inasmuch the MDL has been formed, is essentially punitive to both this Court and the parties before it.

In contrast, the Plaintiffs will suffer no discernible prejudice by having this matter stayed until such time as this case is transferred into the MDL.  This matter has only recently been filed by the Plaintiffs.  Staying this case now will not prejudice the Plaintiffs because this case is in a nascent stage wherein a stay will have virtually no practical effect.  See, e.g., Mathis v. Bristol-Myers Squibb, Co. No. Civ.A. 03-0308, 2003 WL 1193668, at * 1 (E.D. La. Mar. 12, 2003) (granting stay until the Panel decided a pending motion for consolidation and transfer, noting that the case at issue was "newly filed" with no discovery having taken place).

In addition, a stay will preclude the possibility of conflicting and perhaps contradictory rulings on such matters as motions to dismiss, pre-trial and discovery procedures, and other matters.  For this reason, as well, the Court should stay this proceeding until such time as the JPML rules on the request to transfer this case to the MDL.

## <u>CONCLUSION</u>

In light of the foregoing, ConAgra respectfully requests a stay of these proceedings, other than mutually agreed-to procedures to inspect, test, preserve, or document that which the parties believe may be material or relevant evidence in this and related matters, other than mutually agreed-to procedures to inspect, test, preserve, or document that which the parties believe may be material or relevant evidence in this and related matters, until such time as the JPML rules on the request to transfer this case to the MDL.

/s Timothy W. Knight
Timothy W. Knight (KNI021)

/s Lucy W. Jordan
Lucy W. Jordan (JOR037)
Attorneys for Defendant
ConAgra Foods, Inc.

**<u>OF COUNSEL:</u>**

Kee & Selby, LLP
1900 International Park Drive
Suite 220
Birmingham, AL 35243
(205) 968-9900
fax (205) 968-9909
email:  tk@keeselby.com
         lj@keeselby.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2007, a copy of the foregoing pleading was filed electronically using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail.

           s/ Lucy W. Jordan
           OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

BRIAN COX and SUSANNA COX,
Husband and wife, individually, and Susanna Cox
As Guardian Ad Litem of
~~████████████████████~~ minors,

        Plaintiffs,

        v.

CONAGRA FOODS, Inc. a
Delaware corporation;

        Defendant.

NO. *07-6027-CV-S-HFS*

Demand for Jury Trial

## COMPLAINT

COMES NOW the plaintiffs, by and through their attorneys of record, ALESHIRE, ROBB, SIVILS, P.C and MARLER CLARK, L.L.P., P.S., and allege as follows:

### I. PARTIES

1.    The plaintiffs are residents of St. Joseph, Buchannan County, Missouri. The plaintiffs reside within the jurisdiction of this Court. The plaintiffs Brian and Susanna Cox are husband and wife and the natural parents of ████████████████, minors.

2.    The Defendant, ConAgra Foods Inc. (ConAgra), is a Delaware corporation, organized under the laws of the state of Delaware, authorized to do business in the state of Missouri, with principal offices located at One ConAgra Drive, Omaha, Nebraska, 68102. At all times relevant hereto, ConAgra was the manufacturer and seller of Peter Pan Peanut Butter and Great Value Peanut Butter.

## II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendant has certain minimum contacts with the State of Missouri such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

4.      Venue in the United States District Court for the Western District of Missouri is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiffs' claims and causes of action occurred in this judicial district, and because the Defendant Conagra was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III. GENERAL ALLEGATIONS

### *Salmonella*

5.      *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals, including birds. *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with animal feces. Contaminated foods usually look and smell normal. Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs, but all foods, including vegetables, may become contaminated. Many raw foods of animal origin are frequently contaminated, but fortunately thorough cooking kills *Salmonella*. A food handler who neglects to wash his or her hands with soap and warm water after using the bathroom may also contaminate food.

6.      Once in the lumen of the small intestine, the bacteria penetrate the epithelium, multiply, and enter the blood within 24 to 72 hours. As few as 15-20 cells of *Salmonella* bacteria

COMPLAINT                                                                Page - 2

can cause salmonellosis or a more serious typhoid-like fever. Variables such as the health and age of the host and virulence differences among the serotypes affect the nature of the diagnosis. Infants, elderly, hospitalized, and the immune suppressed are the populations that are the most susceptible to disease and suffer the most severe symptoms.

7.      The acute symptoms of *Salmonella* gastroenteritis include the sudden onset of nausea, abdominal cramping, and bloody diarrhea with mucous. There is no real cure for *Salmonella* infection, except treatment of the symptoms.

8.      Persons with severe diarrhea may require rehydration, often with intravenous fluids. *Salmonella* can be treated with ampicillin, gentamicin, trimethoprim/sulfamethoxazole, or ciprofloxacin. Unfortunately, some *Salmonella* bacteria have become resistant to antibiotics, largely as a result of the use of antibiotics to promote the growth of feed animals.

9.      Persons with diarrhea usually recover completely, although it may be several months before their bowel habits are entirely normal. A small number of persons who are infected with *Salmonella* will go on to develop pains in their joints, irritation of the eyes, and painful urination. This is called Reiter's syndrome. It can last for months or years, and can lead to chronic arthritis, which is difficult to treat. Antibiotic treatment does not make a difference in whether or not the person later develops arthritis.

**Past Peanut Butter Outbreaks**

10.      The first documented outbreak, in 1996, of salmonellosis associated with the consumption of peanut butter was reported in the Journal of Applied Microbiology in 2000. Between April and June 1996, 15 persons with *Salmonella* enterica serovar Mbandaka infection were reported in South Australia. *Salmonella* Mbandaka was isolated from three opened jars of peanut butter from case households, and from three unopened jars from retail outlets. Further

investigation implicated roasted peanuts from a third Australian state as the source of the *Salmonella* contamination

### The Peter Pan and Great Value Outbreak and Recall

11.    On February 14, 2007 the FDA warned consumers not to eat Peter Pan and Great Value brands of peanut butter with a product code beginning 2111, and announced a recall of the products by their manufacturer, ConAgra. The FDA announced the link of 288 reported cases in 39 states of *Salmonella* serotype Tennessee to the consumption of the product.

### Plaintiffs' Injuries

12.    The Cox's are regular customers at the Wal-Mart "Superstore" in north St. Joseph, Missouri. The Cox's exclusively purchase Great Value Peanut Butter.

13.    The Cox's began purchasing the Great Value Peanut Butter exclusively on or before October, 2006.

14.    Beginning in October, 2006 the three members of the Cox family that consume peanut butter, Susanna, ▆▆▆▆, and ▆▆▆ began developing gastrointestinal illnesses. ▆▆▆▆▆ and ▆▆▆ both required treatment at local urgent care centers for their illnesses.

15.    At the time of the announcement of the recall, ▆▆▆▆ was again ill with gastrointestinal symptoms. At that time, the Cox family had four jars of Great Value Peanut Butter in their home, all with the lot code 2111.

16.    The Cox family's illnesses were caused by consumption of contaminated Great Value Peanut Butter.

17.    The Cox family has incurred and will continue to incur medical expenses, have suffered and will continue to suffer pain, loss of enjoyment of life, emotional distress, and

medical problems in the future as a direct and proximate result of contaminated Great Value Peanut Butter.

## IV. <u>CAUSES OF ACTION</u>

<u>Strict Liability—Count I</u>

18.    The Defendant ConAgra was at all times relevant hereto the manufacturer and seller of the adulterated food product that is the subject of the action.

19.    The adulterated food product that Defendant ConAgra manufactured, distributed, and/or sold was, at the time it left the defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained *Salmonella*, a deadly pathogen.

20.    The adulterated food product that the Defendant ConAgra manufactured, distributed, and/or sold was delivered to the Plaintiffs without any change in its defective condition.  The adulterated food product that the defendant manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by the Plaintiffs.

21.    The Defendant ConAgra owed a duty of care to the plaintiffs to design, manufacture, and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health.  Defendant ConAgra breached this duty.

22.    The Defendant ConAgra owed a duty of care to the Plaintiffs to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer.  Defendant ConAgra breached this duty.

23.    Plaintiffs suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendant manufactured, distributed, and/or sold.

WHEREFORE, Plaintiffs pray for judgment on Count I of their Complaint against Defendant ConAgra in an amount that is fair and reasonable, for costs, and for any other relief the Court deems proper.

### Breach of Warranty—Count II

24.    The Defendant ConAgra is liable to the Plaintiffs for breaching express and implied warranties that it made regarding the adulterated product that the Plaintiffs purchased. These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use.  Specifically, Defendant ConAgra expressly warranted, through its sale of food to the public and by the statements and conduct of its employees and agents, that the food it prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

25.    Plaintiffs allege that the *Salmonella*-contaminated food that Defendant ConAgra sold to Plaintiffs would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

26.    Plaintiffs allege that the *Salmonella*-contaminated food that the defendant sold to Plaintiffs was not fit for the uses and purposes intended, *i.e.* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

27.    As a direct and proximate cause of the Defendant's breach of warranties, as set forth above, the plaintiffs sustained injuries and damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment on Count II of their Complaint against Defendant ConAgra in an amount that is fair and reasonable, for costs, and for any other relief the Court deems proper.

<u>Negligence—Count III</u>

28.    The Defendant ConAgra owed a duty to the Plaintiffs to use reasonable care in the manufacture, distribution, and sale of its food product, which duty would have prevented or eliminated the risk that the defendant's food products would become contaminated with *Salmonella* or any other dangerous pathogen.  The Defendant ConAgra breached this duty.

29.    The Defendant ConAgra had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent.  The Plaintiffs are among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

30.    The Defendant ConAgra had a duty to properly supervise, train, and monitor its respective employees, and to ensure their compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but it failed to do so and was therefore negligent.

31.    The Defendant ConAgra had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but it failed to do so and was therefore negligent.

32.    As a direct and proximate result of the defendant's acts of negligence, the Plaintiffs sustained injuries and damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment on Count III of their Complaint against Defendant ConAgra in an amount that is fair and reasonable, for costs, and for any other relief the Court deems proper.

<u>Negligence Per Se—Count IV</u>

33.    The Defendant ConAgra had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of its food product, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq.*), and the Missouri adulterated food statutes, § 196.010 RSMo *et. seq.*, the Missouri Merchandising Practices Act, § 407.020 RSMo *et. seq.*

34.    The Defendant ConAgra failed to comply with the provisions of the health and safety acts identified above, and, as a result, was negligent *per se* in its manufacture, distribution, and sale of food adulterated with *Salmonella*, a deadly pathogen.

35.    As a direct and proximate result of conduct by the Defendant ConAgra that was negligent *per se*, the Plaintiffs sustained injury and damages in an amount to be determined at trial.

36.    As a result of Defendant ConArga's violation of the Missouri Merchandising Practices Act, Plaintiffs are entitled to punitive damages and attorneys' fees.

WHEREFORE, Plaintiffs pray for judgment on Count IV of their Complaint against Defendant ConAgra in an amount that is fair and reasonable, for additional award of punitive damages and attorneys' fees, for costs, and for any other relief the Court deems proper.

## **JURY DEMAND**

The plaintiffs hereby demand a jury trial.

ALESHIRE, ROBB & SIVILS, P.C.

Gregory W. Aleshire  #38691
William R. Robb  #43322
Daniel B. Sivils  #40685
2847 Ingram Mill Road, A-102
Springfield, MO 65804
(417) 869-3737
FAX (417) 869-5678

William D. Marler, WSBA #17233
bmarler@marlerclark.com
MARLER CLARK, LLP PS
701 First Avenue, Suite 6600
Seattle, WA  98104
Tel.  (206) 346-1888
Fax  (206) 346-1898
(pending admission *pro hac vice*)

Attorneys for Plaintiffs

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 17 2007

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

*DOCKET NO. 1845*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE CONAGRA PEANUT BUTTER PRODUCTS LIABILITY LITIGATION*

*BEFORE WM. TERRELL HODGES, CHAIRMAN, D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR.,[*] KATHRYN H. VRATIL, DAVID R. HANSEN AND ANTHONY J. SCIRICA, JUDGES OF THE PANEL*

*TRANSFER ORDER*

This litigation currently consists of twenty actions listed on the attached Schedule A and pending in thirteen districts as follows: five actions in the District of South Carolina; three actions in the Northern District of Georgia; two actions in the Middle District of Georgia; and one action each in the Middle District of Florida, the Southern District of Florida, the Northern District of Mississippi, the Western District of Missouri, the Western District of New York, the Eastern District of Oklahoma, the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the Eastern District of Tennessee, and the Western District of Washington.[1]  Before the Panel are three motions, brought by various plaintiffs, pursuant to 28 U.S.C. § 1407, for an order centralizing this litigation, respectively, in the Northern District of Georgia, the District of South Carolina or the Western District of Washington.[2] All responding parties support centralization, but disagree as to the selection of a transferee forum. Common defendant ConAgra Foods, Inc. (ConAgra) supports centralization in the Western District of Missouri or, alternatively, the Northern District of Georgia or the Western District of Washington. Responding plaintiffs have suggested several additional districts in which to centralize the actions, including the District of Colorado, the Northern District of Illinois, the Southern District of Mississippi, the District of New Jersey, or the Middle District of Pennsylvania.

On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Northern

---

[*] Judge Miller took no part in the decision of this matter.

[1] The Panel has been notified of 34 potentially related actions pending in multiple federal districts. In light of the Panel's disposition of this docket, these actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

[2] Moving plaintiff in the Northern District of Mississippi action initially failed to designate a desired transferee forum, but in a later submission expressed support for transfer to the Western District of Washington.

- 2 -

District of Georgia will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Plaintiffs in all actions allege harm from consuming and/or purchasing contaminated peanut butter that was manufactured and packaged at ConAgra's Sylvester, Georgia, plant. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve the resources of the parties, their counsel and the judiciary.

The Panel is persuaded that the Northern District of Georgia is an appropriate transferee forum for this litigation. This district, where three actions and two potential tag-along actions are pending, enjoys the support of several plaintiffs and, in the alternative, ConAgra. Likely relevant documents and witnesses may be found in this district, inasmuch as the manufacturing plant where the contamination occurred and the governmental agency that investigated the contamination are located there. By centralizing this litigation before Judge Thomas W. Thrash, Jr., we are selecting a jurist experienced in multidistrict litigation to steer this matter on a prudent course.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the Northern District of Georgia are transferred to the Northern District of Georgia and, with the consent of that court, assigned to the Honorable Thomas W. Thrash, Jr., for coordinated or consolidated pretrial proceedings with the actions listed on Schedule A and pending in that district.

FOR THE PANEL:

_____
Wm. Terrell Hodges
Chairman

## SCHEDULE A
## MDL NO. 1845
## IN RE CONAGRA PEANUT BUTTER PRODUCTS LIABILITY LITIGATION

### Middle District of Florida

*Marion Caldarera v. ConAgra Foods, Inc., et al.*, C.A. No. 8:07-384

### Southern District of Florida

*Charles Stafford v. ConAgra Foods, Inc.*, C.A. No. 9:07-80178

### Middle District of Georgia

*Karen Klepsig, et al. v. ConAgra Foods, Inc.*, C.A. No. 1:07-37
*Geoffrey Midler v. ConAgra Foods, Inc.*, C.A. No. 1:07-42

### Northern District of Georgia

*Anne Cease, et al. v. ConAgra Foods, Inc.*, C.A. No. 1:07-425
*John Harper v. ConAgra Foods, Inc.*, C.A. No. 1:07-538
*Grady Ware, et al. v. ConAgra Foods, Inc.*, C.A. No. 4:07-40

### Northern District of Mississippi

*Pamela Gateley, etc. v. ConAgra Foods, Inc.*, C.A. No. 2:07-35

### Western District of Missouri

*Brian Cox, et al. v. ConAgra Foods, Inc.*, C.A. No. 5:07-6027

### Western District of New York

*Mark Avalone, et al. v. ConAgra Foods, Inc.*, C.A. No. 6:07-6084

### Eastern District of Oklahoma

*Esther Cranford v. ConAgra Foods, Inc.*, C.A. No. 6:07-56

### Eastern District of Pennsylvania

*Lucille A. Knight v. ConAgra Foods, Inc.*, C.A. No. 2:07-818

- A2 -

**MDL No. 1845 Schedule A (Continued)**

### Middle District of Pennsylvania

*Kathleen Nieves, et al. v. ConAgra Foods, Inc.*, C.A. No. 3:07-327

### District of South Carolina

*Annie Blackwell v. ConAgra Foods, Inc.*, C.A. No. 0:07-529
*Thomas B. Price v. ConAgra Foods, Inc.*, C.A. No. 3:07-536
*Jerry Shawn Medford v. ConAgra Foods, Inc.*, C.A. No. 3:07-611
*Jamie S. Jeffords v. ConAgra Foods, Inc.*, C.A. No. 4:07-530
*Jennifer Ann Hoey, et al. v. ConAgra Foods, Inc.*, C.A. No. 7:07-544

### Eastern District of Tennessee

*Cynthia Woodlee, et al. v. ConAgra Foods, Inc.*, C.A. No. 4:07-15

### Western District of Washington

*James Winston Daniels, II, et al. v. ConAgra, Inc.*, C.A. No. 2:07-259

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

James H. Walsh
Direct: 804.775.4356

# MCGUIREWOODS

jwalsh@mcguirewoods.com
Direct Fax: 804.698.2200

August 24, 2007

**VIA FACSIMILE**

Mr. Jeffery N. Lüthi
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
One Columbus Circle NE
Thurgood Marshall Federal Judiciary Building
Room G-255, North Lobby
Washington, DC  20002-8004

  Re: In re ConAgra Salmonella Litigation, MDL No. 1845

Dear Mr. Lüthi:

   Pursuant to Rule 7.5(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, ConAgra notifies this Panel of the following additional potential "tag-along actions" to those actions already consolidated in MDL No. 1845 now pending in the United States District Court for the Northern District of Georgia:

Mary F. Brown, et al. v. ConAgra Foods, Inc., et al., 4:07-cv-02745 (unassigned), filed August 24, 2007, in the United States District Court, Southern District of Texas

A.K.C., a minor, et al. v. ConAgra Foods, Inc., et al., 2:07-CV-00743 (Thompson, J.), filed August 21, 2007, in the United States District Court, Middle District of Alabama;

Lillian Katz v. ConAgra Foods, Inc., 1:07-CV-11509 (Tauro, J.), filed August 14, 2007, in the United States District Court, District of Massachusetts;

Sylvia McRae v. ConAgra Foods, Inc., 8:07-CV-01491-EAK-EAJ (Kovachevich, J.), filed August 21, 2007, in the United States District Court, Middle District of Florida;

Donna Powell v. ConAgra Foods, Inc., 1:07-CV-00216-PS (Simon, J.), filed August 17, 2007, in the United States District Court, Northern District of Indiana.

Mr. Jeffery N. Lüthi
Judicial Panel on Multidistrict Litigation
August 24, 2007
Page 2

Very truly yours,

James H. Walsh

cc:    Panel Service List
JHW/say

```
User ID: DDNEBLET
================================================================================
TO: Name: Mr. Jeffery N. Luthi, Clerk of the Panel
    Company: Thurgood Marshall Federal Judiciary Bldg.
    Fax Phone Number: 1-202-502-2888
    Contact Phone Number:
    Info Code 1: 2050850                Info Code 2: 0001

Sent to remote ID:2025022888
Sent at:Fri Aug 24 16:26:37 2007
Sent on channel 11
Elapsed Time:  1 minute,  6 seconds
Transmission Status (0/339;0/0): Successful Send
Page Record: 1 - 3.
--------------------------------------------------------------------------------
```

# McGuireWoods

| No. of pages (including cover): 03    Date: Friday, August 24, 2007 4:02:16 PM |
| :--- |
| If all pages are not received, please call the Fax Operator indicated below |

**To:**  Mr. Jeffery N. Luthi, Clerk of the Panel

**Office/Company/Firm:**  Thurgood Marshall Federal Judiciary Bldg.

**Phone Number:** _____    **Fax Number:**  1-202-502-2888

**From:**  James H. Walsh, Esq.

**Office:**  Richmond    **Direct Fax Number:** _____

**Sender's Direct Dial Phone Number:** _____

**Remarks:**

| RICHMOND, VA | 804/775-1061 | 804/775/1000 | 804/775-7456 |
| :--- | :--- | :--- | :--- |

This Fax is intended for the recipient indicated above. It may be confidential or protected from disclosure by the attorney-client privilege or work-product doctrine. If you have received this Fax in error, please destroy it immediately. Thank you.